UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-10545-GAO

YVES MARIE PREVAL,
Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
September 30, 2015

O'TOOLE, D.J.

## I.      Introduction

The plaintiff, Yves Marie Preval, appeals the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner").[1] Preval applied for DIB on July 28, 2011, and for SSI benefits on July 29, 2011, claiming she had become disabled on January 12, 2010. (Administrative Tr. at 19 [hereinafter R.].)[2] Preval's applications were denied at the initial level of review on October 21, 2011, and upon reconsideration on January 24, 2012. (Id.) On January 27, 2012, Preval filed a written request for hearing before an Administrative Law Judge ("ALJ"). (Id.)

---

[1] Although separate statutes and regulations exist for DIB and SSI claims, the legal standards are the same. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

[2] The administrative record has been filed electronically (dkt. no. 12). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

The ALJ hearing was held on December 4, 2012. (Id. at 37–80.) Preval was represented by an attorney. (Id. at 37.) Preval and a vocational expert provided oral testimony. (Id.) On January 18, 2013, the ALJ issued a written decision finding that Preval was disabled from January 12, 2010, through October 23, 2012. (Id. at 19–32.) The ALJ found that Preval experienced medical improvement beginning on October 24, 2012, and that, although Preval could no longer perform her past relevant work, as of October 24, 2012, there were other jobs she could still perform. (Id. at 31–32.) Accordingly, the ALJ determined that as of October 24, 2012, Preval was not disabled. (Id. at 32.) The Appeals Council denied Preval's request for review on January 10, 2014. (Id. at 1–3.)

Before the Court are Preval's Motion to Reverse (dkt. no. 18) and the Commissioner's Motion to Affirm Commissioner's Decision (dkt. no. 19).

## II.   **Background**

Preval was forty-nine when the ALJ issued his final decision. (R. at 31, 41.) She has a college education and an associate's degree. (Id. at 43–44.) Before the alleged onset of disability on January 12, 2010, Preval worked as a medical secretary and a certified nursing assistant. (Id. at 26.) Preval claims she is disabled from a combination of neck, back, knee, and leg injuries, as well as stress, depression, and severe headaches. (Id. at 24.)

### A.   Medical History

Preval reported to examining physicians that she fell from a three-story height when a building collapsed in the January 2010 earthquake in Haiti. (Id. at 336.) According to notes contained in the administrative record, Preval visited Signature Healthcare Brockton Hospital on May 27, 2011, with complaints of shoulder, hip, and knee pain. (Id. at 332.) On June 6, 2011, she was seen at Orthopedic Care Specialists for pain in multiple regions which had made it difficult to

walk for several months. (Id. at 336.) She complained of left shoulder pain, pain in her arm with numbness and tingling, mild back pain, mild groin pain, and numbness and paresthesias in her foot. (Id.) She was diagnosed with left shoulder pain and possible impingement syndrome, possible left-side cervical radiculopathy, and left-sided lumbar radiculopathy. (Id. at 337.) A course of corticosteroid and lidocaine injections was recommended. (Id. at 337.) EMG and NCV tests dated June 21, 2011, showed mild left L5/S1 radiculopathy. (Id. at 338.) A June 23, 2011 MRI showed straightening of the normal lumbar lordosis. (Id. at 340.) At a follow-up appointment on July 1, 2011, the orthopedic office notes state that the left impingement syndrome was improving but also noted right impingement syndrome/bursitis and left L5-S1 myeloradiculopathy. Injections of lidocaine and methylprednisolone were administered. (Id. at 342.)

Office notes from a visit to Brockton Neighborhood Health Center on August 30, 2011, characterize Preval as a "Haitian earthquake survivor." (Id. at 345.) The "Clinical Assessment" includes "Posttraumatic stress disorder" and "Major Depression, Recurrent, Moderate." (Id.)

On February 22, 2012, Preval visited Angels Neurological Centers complaining of a long history of migraine headaches that had intensified since the earthquake to a 10/10 severity on a daily basis. (Id. at 505.) Office notes reflect that her gait was slightly off balance and that she had difficulty tandem walking. (Id. at 508.) An EEG performed on March 8, 2012, had normal results. (Id. at 390.) On April 4, 2012, in a follow-up visit to the office, she reported to Nurse Practitioner Jennifer Miley that she was having headaches four times per week and that she had weakness in her upper extremities with sharp radiating pain. (Id. at 498, 501.) Motor testing revealed that her right hand grip was decreased. (Id. at 501.)

On October 23, 2012, Preval met with Nurse Practitioner Miley for another follow-up. (Id. at 461–65.) According to the office notes, Preval reported that her headaches had decreased "a

3

great deal" from prior visits and that she had "seen a great deal of improvement since inc[reasing] Nortriptyline." (Id. at 461.) Whereas she was having nearly daily headaches before, she now reported only twice weekly headaches. (Id. at 461, 464.) She stated that the "foggyheadedness has improved" since discontinuing Topamax and that neck pain and trapezius tenderness "has seen a great deal of improvement since series of 3 TP injections." (Id.) She reported "only intermittent mild muscle spasms at this point." (Id. at 461.) The physical examination revealed slight tenderness with palpation of her trapezius muscles bilaterally. (Id. at 464.) She had symmetric deep tendon reflexes in the upper extremities and patellas and normal muscle strength bilaterally in the upper and lower extremities. (Id.) Her gait was normal. (Id.) The "Impression & Recommendations" reflect that Preval was to increase her Nortriptyline dosage to help with headaches as well as cervical pain and employ heat pads and stretching. (Id.)

> B.    The ALJ's Decision

>> i.    Period of Disability

The ALJ's opinion tracked the five-step sequential evaluation process mandated by 20 C.F.R. §§ 404.1520(a) and 416.920(a) to determine whether Preval was disabled. (See R. at 20–32.)

At the first step, the ALJ determined that Preval had not engaged in "substantial gainful activity" since January 12, 2010, the alleged onset date. (Id. at 23.)

At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" that also meets the duration requirements. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ found that from January 12, 2010, through October 23, 2012, Preval had the following severe impairments: "cervical and lumbar spine

degenerative changes with radiculopathy, shoulder impingement, headaches, and depressive and anxiety disorders." (R. at 23 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

Step three, like step two, considers the severity of the alleged impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ found that Preval's impairment did not meet or medically equal a listed impairment[3] and therefore proceeded to assess her Residual Functional Capacity ("RFC")[4] before reaching step four. (R. at 23.)

The ALJ found that from January 12, 2010, through October 23, 2012, Preval had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she "could perform work up to and including semi-skilled tasks; and could not perform such work in terms of the required lifting, carrying, pushing, pulling, sitting, standing, and walking on a regular and continuing basis of 8 hours per day or an equivalent work schedule." (R. at 23–24.)

At step four, the claimant's RFC is compared with past relevant work to determine if the claimant is able to resume that work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to resume past relevant work, she is determined to be not disabled. Id. If the claimant is unable to resume past relevant work, the inquiry proceeds to the fifth step. Id. The ALJ found that Preval would be unable to perform her past work as a medical secretary or certified nursing assistant because, for the period of disability, she was unable to perform any work on a regular and continuing basis. (R. at 26.)

At the fifth and final step, the claimant's RFC, age, education, and work experience are considered to determine if she is capable of performing other work currently available in the

---

[3] See 20 C.F.R. Part 404, Subpart P, Appendix 1.
[4] A claimant's residual functional capacity is determined "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e), 416.920(e) (cross-referencing 20 C.F.R. §§ 404.1545, 416.945).

national and regional economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (cross-referencing 20 C.F.R. §§ 404.1560(c), 416.960(c)). If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national and regional economy, the appropriate finding is "not disabled." Id.

The ALJ reasoned:

> From January 12, 2010 through October 23, 2012, if the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. However, the additional limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule.

(R. at 27.) Among the additional limitations, the ALJ named Preval's need for frequent breaks, time-off-task, or absences caused by pain and symptoms. (Id. at 25–27.) Accordingly, the ALJ concluded that Preval could not work and was disabled from January 12, 2010, through October 23, 2012. (Id.)

### ii.    Termination of Disability

Once the ALJ found that Preval was disabled from January 12, 2010, through October 23, 2012, he proceeded to determine whether Preval's disability continued through the date of the decision. See 20 C.F.R. §§ 404.1594, 416.994. This determination involves an eight-step evaluation process.[5] 20 C.F.R. § 404.1594(f). The first two steps are repeated from the five-step inquiry described above. Step one assesses whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). Step two examines whether the claimant "has an impairment

---

[5] The DIB regulations contained in Title II of the Social Security Act require an eight-step evaluation process, 20 C.F.R. § 404.1594(f), while the SSI regulations in Title XVI require a seven-step evaluation process, 20 C.F.R. § 416.994(b)(5). The Title XVI process simply excludes the first step of the Title II process. This opinion numbers the steps in accordance with the Title II eight-step process.

or combination of impairments which meets or equals" an "Appendix 1 impairment." 20 C.F.R. § 404.1594(f)(2). The ALJ found Preval satisfied neither of those conditions. (R. at 23, 27.)

At step three, the ALJ determines whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). Medical improvement is "any decrease in medical severity of [the] impairments," as established by improvement in "symptoms, signs, and/or laboratory findings." 20 C.F.R. § 404.1594(b)(1). The ALJ found that "medical improvement occurred as of October 24, 2012." (R. at 28.) The ALJ cited, in general terms, treatment records from Preval's October 23 office visit and other visits leading up to that date. (Id. at 28–31.)

Because he found medical improvement had occurred, the ALJ proceeded to the fourth step. 20 C.F.R. § 404.1594(f)(3). Here, the ALJ determined that the medical improvement was related to the ability to work because there was an increase in Preval's RFC to do basic work activities. (R. at 29 (citing 20 C.F.R. § 404.1594(b)(4)(i)).) If the medical improvement is related to the ability to work, but if the RFC still shows significant limitation to the ability to do basic work activities, steps five and six direct the ALJ's analysis to step seven. See 20 C.F.R. § 404.1594(f)(3)–(6).

At step seven, the ALJ assesses the RFC based on current impairments and determines whether the claimant is able to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). The ALJ here determined that Preval was still unable to return to her prior work. (R. at 31.)

Finally, in step eight, the ALJ analyzes whether the claimant can perform other work given the RFC assessment. 20 C.F.R. § 404.1594(f)(8). In considering the claimant's symptoms, the ALJ will only credit those symptoms that can be traced to a "medically determinable impairment." See 20 C.F.R. § 404.1529(b). The ALJ must "evaluat[e] the intensity and persistence of [the claimant's] symptoms" and determine the extent to which they limit the claimant's "capacity for

work." 20 C.F.R. § 404.1529(c)(1). The ALJ found Preval's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms. (R. at 29.) However, he discredited some of Preval's statements concerning the intensity, persistence, and limiting effects of these symptoms since October 24, 2012, because they were not supported by the record as a whole. (Id. at 29–31.)

Based on his assessment of Preval's symptoms, the ALJ determined that beginning October 24, 2012,

> the claimant has had the residual functional capacity to perform light work . . . except she also: is limited to lifting no more than 10 pounds; must be afforded an option to alternate sitting and standing every 30 minutes; is limited to typing on a keyboard for no more than 30 minutes out of an hour; and can perform work up to and including semi-skilled tasks.

(Id. at 29.) In making this finding, he gave Preval "the benefit of the doubt" and included some of the exertional limits she described at the hearing. (Id.)

The ALJ then examined whether there was other work that Preval could perform, given her RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). In performing this analysis, an ALJ is guided by the Medical-Vocational Guidelines (the "Grid"). 20 C.F.R. Part 404, Subpart P, Appendix 2 [hereinafter Appendix 2]. A vocational expert ("VE") also testified at the hearing as to what jobs Preval could perform given her limitations. The VE provided four job codes as examples, all sedentary, three of them semi-skilled and one unskilled. (R. at 31–32.) Noting that he could not directly apply Rule 202.22 of the Grid to Preval because her ability to perform light work had been reduced by additional limitations, the ALJ used the VE's testimony to conclude that beginning October 24, 2012, "there have been jobs that exist in significant numbers in the national economy that the claimant can perform." (See id. at 31 (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 404.960(c), 416.966).) Accordingly, the ALJ found that Preval's disability ended on October 24, 2012. (Id. at 32.)

8

### III.    Standard of Review

When reviewing a denial of Social Security benefits, the Court will uphold the ALJ's decision when it is supported by substantial evidence. 42 U.S.C. § 405(g); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence exists, and the ALJ's findings must be upheld, if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Id. (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's conclusion must be upheld, when supported by substantial evidence, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

### IV.    Discussion

Preval challenges the ALJ's finding that her disability ended on October 24, 2012. She argues that there was not substantial evidence of medical improvement and that the ALJ improperly substituted his lay assessment for medical opinion in crafting a revised RFC. As to the availability of other jobs, Preval argues that the ALJ incorrectly found that she could perform semi-skilled work. Finally, she claims that the ALJ erred in mechanically applying the Grid and failing to address her borderline age. I conclude that the ALJ's failure to address the significance or not of Preval's potentially borderline age requires a remand.

In applying the Grid, an ALJ must decide whether a claimant precisely fits one of the profiles listed. Appendix 2 § 200.00(d). If a claimant does not, and falls between two rules, then "those rules still 'provide guidance;' they are to be given 'consideration,' and they 'provide an overall structure for evaluation.'" Vazquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 3 (1st Cir. 1982) (quoting Appendix 2 § 200.00(d)). If a claimant's RFC does not fall precisely within one of the exertion categories (e.g. sedentary work, light work, etc.), then the ALJ is encouraged

to use a vocational expert to determine whether the claimant can perform any remaining jobs. <u>See</u> <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 890 F.2d 520, 528 (1st Cir. 1989). However, if the VE's testimony contradicts the Grid, say by implying that the claimant is not disabled when the Grid says she is, the ALJ must explain his reasoning in finding one way or the other. <u>See</u> <u>Vazquez</u>, 683 F.2d. at 4–5. Three of the elements of the Grid are at issue in this case: the exertion level Preval can perform, whether Preval's skills from her prior work are transferable, and Preval's age category.

The first element of the Grid an ALJ has to determine is the maximum exertion level the claimant can perform. In evaluating whether a claimant can perform light work, sedentary work, etc., an ALJ may only use a category in which the claimant can perform "substantially all" of the tasks required by that category. <u>See</u> 20 C.F.R. § 404.1567(b); <u>Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.</u>, 48 F.3d 114, 119 (3d Cir. 1995). Relevant here, light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). Sedentary work does not. <u>Id.</u> at *5.

Preval's RFC as determined by the ALJ precludes the use of the "light" category on the Grid. Here, the ALJ found that Preval needs to be allowed a choice of standing up or sitting down every thirty minutes, which "impeded" her ability to perform light work. (R. at 29, 31.) This stand or sit requirement is inconsistent with light work's requirement of being on one's feet for six hours out of the day. <u>See</u> SSR 83-10, 1983 WL 31251, at *6 (1983); <u>Gutierrez v. Barnhart</u>, 109 F. App'x 321, 327 (10th Cir. 2004). Thus, in applying the Grid, the ALJ could not look to the light exertion table for conclusive guidance; he had to look also to the sedentary table.

The second element at issue is whether the skills from Preval's prior work are transferable to any potential future work. While the ALJ heard testimony from the VE about the transferability

of Preval's skills, (R. at 74), the ALJ explicitly did not find one way or the other whether Preval's skills were transferable, (Id. at 31). Thus, the possibility that Preval has no transferable skills must be considered by the ALJ. See Vazquez, 683 F.2d at 3.

The third issue is Preval's age category. At the time of the ALJ's decision on January 18, 2013, Preval was four months and a day away from being age fifty, the age at which a person moves from "younger person" to "closely approaching advanced age" under the regulations. See 20 C.F.R. § 404.1563. The regulations specify that an ALJ "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 1563(b). While there is no precise border, courts have often found the "borderline" to start somewhere in the neighborhood of six months prior to the next category. See Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1168 (W.D. Tenn. 2002) (canvassing cases). Coincidentally, like Preval, the claimant in Pickard was also four months and a day away from reaching the next age category when the ALJ handed down the decision, and the judge there remanded on that issue. Id. at 1168–69. In this case, the ALJ stated that Preval was a "younger individual" under the regulations without any discussion of whether a different category might be more applicable due to her borderline age. (See R. at 31.)

Here, whether Preval falls into the "closely approaching advanced age" category could be dispositive under the Grid. As discussed above, the light work table cannot be mechanically applied because Preval cannot perform the full range of light work, necessitating consideration of the sedentary table. Additionally, the ALJ did not find that Preval's skill were transferable. The combination of those factors implicates Rules 201.14 and 201.21 on the Grid. With an age "closely approaching advanced age," no transferable skills, and only an ability to perform sedentary work, Rule 201.14 directs a finding of "disabled." However, at the "younger person" age category, Rule 201.21 directs a finding of "not disabled." While changing any of these factors — exertion level,

age, and transferability of skills — would suggest a finding of not disabled, Rule 201.14 is potentially applicable based on the ALJ's ruling, and an explanation is necessary for determining why that Rule does not apply here.

The First Circuit faced a similar situation in <u>Rivera-Figueroa v. Sec'y of Health & Human Servs.</u>, 858 F.2d 48 (1st Cir. 1988). There, like here, the claimant sat on the border of several different rules, including exertion, age, and transferable skill categories, some which would have demanded a finding of not disabled, and others, a finding of disabled. <u>See</u> <u>id.</u> at 49. There, like here, a vocational expert testified that the claimant could perform some jobs, but at a lighter exertional level than the one the ALJ found applied to the claimant. <u>See</u> <u>id.</u> at 52 n.2. The First Circuit remanded to the ALJ to determine whether the claimant was limited to the lower exertion category, and if so, to explain how the vocational expert "reached a conclusion apparently at odds with [the applicable] grid rule" by identifying jobs the claimant could perform. <u>Id.</u>

The analysis in <u>Rivera-Figueroa</u> is instructive. Without the ALJ having specifically made a finding on borderline age or skill transferability, and with the claimant's RFC not sufficiently compatible with the full range of light work, whether or not the Grid directs a finding of disabled is uncertain. This case needs to be remanded to the ALJ to determine whether Preval should be placed in a higher age category because of her borderline age, whether the skills from her previous occupation are transferable to any potential new one, and whether she really can perform light work. More specifically, the ALJ needs to explain whether Grid Rule 201.14 applies to Preval.

**V.**       **Remand**

The decision of the ALJ is vacated insofar as his finding that Preval was not disabled starting October 24, 2012, and the case is remanded. The plaintiff's Motion to Reverse (dkt. no. 18) is GRANTED to that extent, and the Commissioner's Motion to Affirm Commissioner's Decision (dkt. no. 19) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge